Docket No. 14-CV-6115 (JPO)(RWL)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT W. GORDON, ESQ.,

Plaintiff,

-against-

THE CITY OF NEW YORK, MARC ANDES, MARK
PALOMINO, GAYLE SANDERS, FAY LEOUSSIS,
MICHAEL A. CARDOZO, DAVID SANTORO, JOHN
DOE(S) AND JANE DOE(S) (names currently
unknown) each in his/her official and individual
capacities,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PRE-TRIAL MOTION AND MOTION IN LIMINE

***GEORGIA M. PESTANA***
*Acting Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Bruce Rosenbaum*
*Dominique Saint-Fort*
*Tel:  (212) 356-2437/(212) 356-2444*
*Matter No.:  2014-029860*

Bruce Rosenbaum,
Dominique Saint-Fort,
  Of Counsel.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................- 1 -

ARGUMENT ................................................- 6 -

       POINT I ................................................- 6 -

              THE COURT SHOULD PRECLUDE TESTIMONY
OR DOCUMENTARY EVIDENCE FROM
PLAINTIFF OR OTHER WITNESSES
SUGGESTING THAT HIS DAMAGES FOR
EMOTIONAL DISTRESS WAS CAUSED BY ON
THE JOB STRESSORS OR WERE WORK
RELATED TO EITHER THE MAY 12, 2016
INCIDENT, HIS EMPLOYMENT IN THE TORT
DIVISION MANHATTAN, QUEENS OR BRONX
BOROUGH OFFICES OR TO INTERACTION
WITH SUPERVISORS IN SLU OUTSIDE OF THE
PERIOD FROM AUGUST 2010 TO AUGUST
2011................................................- 6 -

       POINT II ................................................- 11 -

              PLAINTIFF IS COLLATERALLY ESTOPPED
FROM CLAIMING THAT HE SUFFERED
DAMAGES FOR EMOTIONAL DISTRESS
CAUSED BY ON THE JOB STRESSORS
RELATED TO THE MAY 12, 2016 INCIDENT. ................................................- 11 -

       POINT III................................................- 14 -

              THE COURT SHOULD PRECLUDE PLAINTIFF
FROM OFFERING EVIDENCE OF OR
REFERING TO ANY NON-VOLUNTARY
TERMINATION OF EMPLOYMENT OR
CONSTRUCTIVE DISCHARGE AND ANY
RESULTANT DAMAGES. ................................................- 14 -

POINT IV........................................................................................- 14 -

       THE COURT SHOULD PRECLUDE TESTIMONY
       OR DOCUMENTARY EVIDENCE FROM
       PLAINTIFF OR OTHER WITNESSES
       CONCERNING WHAT TRANSPIRED ON MAY
       12, 2016 INASMUCH AS DEFENDANTS DO NOT
       DISPUTE THAT PLAINTIFF WAS INJURED ON
       THAT DATE AND SUBSEQUENTLY APPLIED
       FOR BOTH WORKERS' COMPENSATION AND
       LEAVE UNDER THE FMLA..................................................- 15 -

POINT V.........................................................................................- 16 -

       THE COURT SHOULD PRECLUDE TESTIMONY
       BY MELISSA PRESSLEY, LAURA BONAS
       BENJAMIN, NATASHA GODBY, OR
       HUMPHREY UDDOH CONCERNING THE
       PURPORTED DISCRIMINATORY
       ATMOSPHERE IN SLU BASED ON THEIR
       ALLEGED DISCRIMINATORY TREATMENT OR
       EEO COMPLAINTS. ............................................................- 16 -

POINT VI........................................................................................- 19 -

       THE COURT SHOULD PRECLUDE TESTIMONY
       BY PLAINTIFF'S ADVERSARIES AND
       DUPLICATIVE TESTIMONY FROM FORMER
       LAW DEPARTMENT HUMAN RESOURCE
       EMPLOYEES .......................................................................- 19 -

POINT VII .......................................................................................- 19 -

       THE COURT SHOULD PRECLUDE PLAINTIFF'S
       ECONOMICS EXPERT FROM OFFERING
       TESTIMONY OR OTHER EVIDENCE THAT
       PLAINTIFF SUFFERED ECONOMIC DAMAGES
       RESULTING FROM A CONSTRUCTIVE
       DISCHARGE AND SHOULD NOT PERMIT THIS
       WITNESS TO TESTIFY TO THE JURY AS TO
       DAMAGES ..........................................................................- 21 -

POINT VIII ......................................................................................- 22 -

       PLAINTIFF SHOULD BE PRECLUDED
       DESIGNATING THE DEPOSITIONS OF
       CERTAIN INDIVIDUALS AS PART OF HIS
       CASE IN CHIEF..................................................................- 22 -

POINT IX.................................................................................................................- 24 -

CERTAIN EXHIBITS ARE INADMISSIBLE AND
MUST BE EXCLUDED BECAUSE THEY
VIOLATE THE FEDERAL RULES OF EVIDENCE...........................- 24 -

POINT X..................................................................................................................- 28 -

PLAINTIFF SHOULD BE PRECLUDED FROM
ARGUING FAILED THEORIES OF LIABILITY
AND INTRODUCING EVIDENCE CONCERNING
FAILED CLAIMS. ..............................................................................- 28 -

CONCLUSION....................................................................................................................- 30 -

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.,
  262 F.R.D. 293 (S.D.N.Y. 2009) ............................................................................. 23

Barnes v. Anderson,
  202 F.3d 150 (2d Cir. 1999)...................................................................................... 8

Bonas Benjamin v. HHC,
  11-cv-5096 (S.D.N.Y.).............................................................................................. 28

Boucher v. U.S. Suzuki Motor Corp.,
  73 F.3d 18 (2d Cir. 1996).......................................................................................... 21

Buchwald v. Renco Grp., Inc.,
  No. 13 Civ. 7948 (AJN), 2014 U.S. Dist. LEXIS 118239 (S.D.N.Y. Aug. 22,
  2014) .................................................................................................................. 22, 23

Burkybile v. Bd. of Educ.,
  411 F.3d 306 (2d Cir. 2005), <u>cert. den.</u>, 546 U.S. 1062 (2005) ................................ 13

Castro v. City of N.Y.,
  2012 U.S. Dist. LEXIS 23210 (S.D.N.Y. Feb. 23, 2012) ........................................ 14

Castro v. City of New York,
  No. 06 Civ. 2253 (KAM) (RER), 2009 U.S. Dist. LEXIS 69723 (S.D.N.Y.
  Aug. 10, 2009) ......................................................................................................... 19

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
  509 U.S. 579 (1993)................................................................................................... 21

Dolan v. Roth,
  170 Fed. Appx. 743 (2d Cir. 2006)........................................................................... 13

Eng v. Blood,
  No. 04 Civ. 1146 (NAM)(GHL), 2008 U.S. Dist. LEXIS 54802 (N.D.N.Y. July
  17, 2008) .................................................................................................................. 29

Hamza v. Saks Fifth Ave., Inc.,
  2011 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 5, 2011) ................................. 21, 29

Holmes v. Gaynor,
  313 F. Supp. 2d 345 (S.D.N.Y. 2004)....................................................................... 25

Janetka v. Dabe,
   892 F.2d 187 (2d Cir. 1989)................................................................................. 24

Kokoska v. City of Hartford,
   No. 3:12-cv-01111 (WIG), 2014 U.S. Dist. LEXIS 133262 (D. Conn. Sep. 23,
   2014) ................................................................................................................... 11

Kolb v. Cty. of Suffolk,
   109 F.R.D. 125 (E.D.N.Y. 1985) ......................................................................... 23

Levitant v. City of New York Human Res. Admin.,
   No. 05 Civ. 230 (KAM)(MDG), 2011 U.S. Dist. LEXIS 20742 (E.D.N.Y. Feb.
   28, 2011) ............................................................................................................. 29

Lippe v. Bairnco Corp.,
   288 B.R. 678 (S.D.N.Y. 2003)............................................................................. 21

Luitpold Pharm., Inc. v. ED. Geistlich Sohne A.G. Fur Chemische Industrie,
   No. 11 Civ. 681 (KBF), 2015 U.S. Dist. LEXIS 123591 (S.D.N.Y. Sep. 16,
   2015) ................................................................................................................... 22

Manning v. New York University,
   2001 U.S. Dist. Lexis 510 (S.D.N.Y. Jan 24, 2001) ........................................... 18

Martin v. Reno,
   No. 96 Civ. 7646 (NRB), 2000 U.S. Dist. LEXIS 18278 (S.D.N.Y. Dec. 19,
   2000) ................................................................................................................... 18

Meiselman v. Crown Heights Hospital,
   285 N.Y. 389 (1941) .............................................................................................. 8

Morales v. N.Y. Dep't of Labor,
   No. 06-CV-899 (MAD), 2012 U.S. Dist. LEXIS 92075, 2012 WL 2571292
   (N.D.N.Y. July 3, 2012), aff'd, 530 Fed. Appx. 13 (2d Cir. 2013) ....................... 29

Napier v. Bossard,
   102 F.2d 467 (2d Cir. 1939) (Hand, L. J.) ........................................................... 23

Noel v. Inc. Vill. of Lake Success,
   No. CV 13-211 (AKT), 2016 U.S. Dist. LEXIS 22468 (E.D.N.Y. Feb. 24,
   2016) ................................................................................................................... 29

Puglisi v. Town of Hempstead Sanitary Dist. No. 2,
   No. 11-CV-0445 (PKC), 2013 U.S. Dist. LEXIS 111972 (E.D.N.Y. Aug. 8,
   2013) ..................................................................................................................... 8

Soley v. Wasserman,
   No. 08 Civ. 9262 (KMW), 2013 U.S. Dist. LEXIS 99969 (S.D.N.Y. July 16,
   2013) .......................................................................................................................... 23

Tokio Marine & Fire Ins. Co. v. Rosner,
   206 Fed. Appx. 90 (2nd Cir. 2006) ........................................................................... 25

Wills v. Amerada Hess Corp.,
   379 F.3d 32 (2d Cir. 2004) .......................................................................................... 9

Zakkarie Carlucci, et al. v. City of New York, et al.,
   No. 21166/05 .............................................................................................................. 19

**Statutes**

Family Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ................................................... *passim*

New York City Human Rights Law, NYC Admin. Code, §§ 8-101, et seq. ........................... 1, 2, 3

New York State Human Rights Law, NY Executive Law §§ 290, et seq.. ................................. 1, 2

New York State Workers' Compensation Law ................................................................. 12, 13

Title VII, 42 U.S.C. §§ 2000e, et seq. ......................................................................... *passim*

28 U.S.C. § 1738 ............................................................................................................ 13

**Other Authorities**

12 NYCRR § 300.9 .......................................................................................................... 12

Fed. R. Evid. .......................................................... 11, 15, 18, 20, 21, 22, 23, 24, 25, 26

FRCP 12(b) ...................................................................................................................... 2

FRCP 32 ......................................................................................................................... 28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

ROBERT W. GORDON, ESQ.,

                                        Plaintiff,

            -against-

THE CITY OF NEW YORK, MARC ANDES, MARK
PALOMINO, GAYLE SANDERS, FAY LEOUSSIS,
MICHAEL A. CARDOZO, DAVID SANTORO, JOHN
DOE(S) AND JANE DOE(S) (names currently unknown)
each in his/her official and individual capacities,

                                        Defendants.
-------------------------------------------------------------------- x

No. 14-CV-6115 (JPO)(RWL)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PRE-TRIAL MOTION AND MOTION IN LIMINE

Defendants City Of New York, Marc Andes, Mark Palomino, Gayle Sanders, and Fay Leoussis (collectively "Defendants"),[1] by their attorney, Georgia M. Pestana, Acting Corporation Counsel of the City of New York, respectfully submit this pre-trial motion and motion *in limine* in advance of the trial scheduled in the above-captioned matter.

## PRELIMINARY STATEMENT

Plaintiff Robert W. Gordon is an attorney previously employed by the City of New York with the New York City Law Department's Tort Division. He brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), 42 U.S.C. §§ 1981, 1983 ("§ 1981," "§ 1983"), the New York State Human Rights Law, NY Executive Law §§ 290, et seq. ("SHRL"), and the New York City Human Rights Law, NYC Administrative Code §§ 8-101, et seq. ("CHRL"), alleging that he was given a poor evaluation in 2011, denied

---

[1] In an Opinion and Order dated September 28, 2018, the Court dismissed all remaining claims against Defendants Michael A. Cardozo and David Santoro. *See* ECF Doc. No. 150 at 39, 40-41.

promotion to Senior Counsel, given a corrective action plan and transferred to the Torts Division's Queens Borough Office and then to its Bronx Borough Office because of his race (African American), and color (black).  Plaintiff asserted disparate treatment claims, Monell claims, and disparate impact claims.  In addition Plaintiff asserted interference and retaliation claims under the Family Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA") in connection with the cancellation of his group health insurance shortly before his resignation from City employment.

Defendants moved to dismiss the complaint pursuant to FRCP 12(b).  See ECF Dkt. Nos. 18-21.  In a June 2, 2015 Opinion and Order the Court dismissed Plaintiff's § 1983 and § 1985 conspiracy claims, his § 1986 failure to prevent conspiracy claim and his disparate impact claims.  See ECF Dkt. No. 37 at 19-20, 29-31.  The Court also deemed as abandoned the allegations that Defendants identified in their motion to dismiss as time-barred.  See ECF Dkt. No. 37 at 11.  The time-barred claims include: Plaintiff's Title VII Claims Accruing Before July 16, 2011; Plaintiff's §§ 1983, 1985, SHRL, and CHRL Claims Accruing Before August 5, 2011; Plaintiff's § 1981 Claims Accruing Before August 5, 2010; and Plaintiff's § 1986 Claims Accruing Before August 5, 2013.  See ECF Dkt. No. 37 at 11 and ECF Dkt. No. 21 at 11-13.

In subsequent orders, Magistrate Judge Francis granted Plaintiff's motions to twice amend his complaint, first to reinstate disparate impact claims under Title VII, the SHRL and the CHRL, see ECF Dkt. No. 75, and second, to add claims of FMLA interference and retaliation. See ECF Dkt. No. 107.

Thus, Plaintiff's remaining claims prior to Defendants' motion for summary judgment were his timely disparate treatment claims under Title VII, § 1981, the SHRL and the CHRL, his timely retaliation claims under Title VII, § 1981, the SHRL and the CHRL, his timely disparate impact claims under Title VII, the SHRL and the CHRL, his timely hostile work

environment claim under the CHRL, his timely <u>Monell</u> municipal policy claim under § 1983 and his FMLA interference and retaliation claims.

In an Opinion and Order dated September 28, 2018, the Court granted in part and denied in part Defendants' motion for summary judgment.  <u>See</u> <u>generally</u> ECF Doc. No. 150. With regard to Plaintiff's disparate treatment claims under Title VII, the NYSHRL and the NYCHRL against the City, the Court granted Defendants' motion for summary judgment as to Plaintiff's claims regarding his 2013 transfer to the Bronx, but denied the City's motion as to Plaintiff's claims regarding his 2011 performance evaluation and the failure to promote Gordon in 2010 or 2011.  <u>See</u> ECF Doc. No. 150 at 13-31.  With regard to Plaintiff's retaliation claims under Title VII, § 1981, the NYSHRL and the NYCHRL against the City, the Court granted Defendants' motion for summary judgment in its entirety dismissing Plaintiff's claims that his 2012 transfer, 2012 action plan and 2013 transfer to the Bronx were retaliatory.  <u>See</u> ECF Doc. No. 150 at 31-36. With regard to Plaintiff's disparate treatment claims under Title VII, § 1981, the NYSHRL and the NYCHRL against the individually named Defendants, the Court dismissed the claims against Defendants Cardozo and Santoro in their entirety, but denied summary judgment to Defendants Leoussis, Andes, Sanders and Palomino only regarding Plaintiff's 2011 performance evaluation and the 2010/2011 failure to promote claims.  <u>See</u> ECF Doc. No. 150 at 13-31, 36-41.  With regard to Plaintiff's hostile work environment claims under the NYCHRL, the Court granted Defendants' motion for summary judgment on the hostile work environment as to Defendants Cardozo and Santoro, but denied the motion for summary judgment on that claim as to Defendants Andes, Sanders, Palomino, and Leoussis but limited to his work environment during the 2010 and 2011 rating periods.  <u>See</u> ECF Doc. No. 150 at 39-41.  The Court granted Defendants' motion for summary judgment as to Plaintiff's <u>Monell</u> claim.  <u>See</u> ECF Doc. No. 150

at 41-43.  With regard to Plaintiff's FMLA claims, the Court granted Defendants' motion for summary judgment regarding Plaintiff's FMLA retaliation claim but denied Defendants' motion regarding Plaintiff's FMLA interference claim.  See ECF Doc. No. 150 at 45-49.  Finally, after the parties engaged in additional discovery ordered by the Court, Plaintiff chose to withdrawn his disparate impact claims with prejudice.  See ECF Doc. No. 160.

Thus, the only claims that remain to be tried are:

1)      Plaintiff's disparate treatment claims under Title VII, the NYSHRL and the NYCHRL against the City concerning Plaintiff being denied a promotion to Senior Counsel in 2011 and the low 2011 performance evaluation, Plaintiff's disparate treatment claims under § 1981, the NYSHRL and the NYCHRL against Defendants Leoussis, Andes, Sanders and Palomino concerning Plaintiff being denied a promotion to Senior Counsel in 2011 and the low 2011 performance evaluation; and Plaintiff's disparate treatment claim under § 1981 concerning Plaintiff being denied a promotion to Senior Counsel in 2010.[2]

2)      Plaintiff's hostile work environment claims under the NYCHRL as to Defendants Andes, Sanders, Palomino, and Leoussis in 2011; and

3)      Plaintiff's FMLA interference claim against the City that his city-provided group health benefits entitlement was prematurely terminated.

Defendants now move to:

1)      Preclude testimony or documentary evidence from Plaintiff or other witnesses suggesting that his damages for emotional distress was caused by on the job stressors or were work related to either the May 12, 2016 incident, his employment in the Tort Division

---

[2] Plaintiff's Title VII, NYSHRL and NYCHRL claims regarding the 2010 promotion are time-barred.  See ECF Dkt. No. 37 at 11 and ECF Dkt. No. 21 at 11-13.

Manhattan, Queens or Bronx borough offices or to interaction with supervisors in SLU outside of the period from August 2010 to August 2011;

2)      Preclude Plaintiff on collateral estoppel grounds from claiming that he suffered damages for emotional distress caused by on the job stressors related to the May 12, 2016 incident in light of the decision by the workers' compensation board denying his claim for compensation;

3)      Preclude Plaintiff from offering evidence of or referring to any non-voluntary termination of employment or constructive discharge and any resultant damages;

4)      Preclude testimony or documentary evidence from Plaintiff or other witnesses concerning what transpired on May 12, 2016 inasmuch as Defendants do not dispute that Plaintiff was injured on that date and subsequently applied for both workers' compensation and leave under the FMLA;

5)      Preclude testimony by Melissa Pressley, Laura Bonas Benjamin, Natasha Godby, or Humphrey Uddoh concerning the purported discriminatory atmosphere in SLU based on their alleged discriminatory treatment or EEO complaints;

6)      Preclude testimony by Plaintiff's adversaries and duplicative testimony from former Law Department Human Resource employees;

7)      Preclude Plaintiff's economics expert from offering testimony or other evidence that Plaintiff suffered economic damages resulting from a constructive discharge and should not permit this witness to testify to the jury as to damages;

8)      Preclude Plaintiff from designating the depositions of certain individuals as part of his case in chief;

9)      Exclude Plaintiff's proposed Exhibits 1-20, 27, 33, 35-37, 39-56, 59-74, 76, 78-93, 95-99, 101, 108-112, 114, 118-119, 121-128, 130-140, 142-144, 147-164, and 166-176 as inadmissible because they violate the federal rules of evidence; and

10)     Preclude Plaintiff from arguing failed theories of liability and introducing evidence concerning failed claims.

## ARGUMENT

### POINT I

**THE COURT SHOULD PRECLUDE TESTIMONY OR DOCUMENTARY EVIDENCE FROM PLAINTIFF OR OTHER WITNESSES SUGGESTING THAT HIS DAMAGES FOR EMOTIONAL DISTRESS WAS CAUSED BY ON THE JOB STRESSORS OR WERE WORK RELATED TO EITHER THE MAY 12, 2016 INCIDENT, HIS EMPLOYMENT IN THE TORT DIVISION MANHATTAN, QUEENS OR BRONX BOROUGH OFFICES OR TO INTERACTION WITH SUPERVISORS IN SLU OUTSIDE OF THE PERIOD FROM AUGUST 2010 TO AUGUST 2011.**

This Court has dismissed all of Plaintiff's claims concerning his alleged mistreatment while assigned to the Manhattan Borough Office, the Queens Borough Office and the Bronx Borough Office.  See ECF Dkt. No. 21 at 11-13; ECF Dkt. No. 37 at 11, 19-20, 29-31; ECF Doc. No. 150 at 13-31, 31-36, 39-41, 36-41, 41-43.  Indeed, Plaintiff's disparate treatment and hostile work environment claims are strictly limited to his alleged mistreatment while assigned to SLU in 2010 and 2011.  Id. at 41-43; ECF Dkt. No. 108, SAC at ¶¶ 103, 105-111, 283-285.  Accordingly, evidence in support of his claim that he suffered emotional distress must be limited to events occurring from August 2010 to August 2011 while Plaintiff was assigned to SLU.  The Court should limit testimony or documentary evidence from Plaintiff or from other

witnesses in support of his claim for damages for emotional distress to this brief period of time in 2010 and 2011.  In particular, the Court should preclude testimony or documentary evidence from Plaintiff or from other witnesses suggesting that his damages for emotional distress was caused by on the job stressors or were otherwise work related to: his meeting with Karlyne Fequiere-Pierre in the Bronx on May 12, 2016, his assignment to the Manhattan Borough Office from September 2004 to March 2006, his assignment to the Queens Borough Office from March 2006 until August 2007 and from August 2012 until August 2013 and his assignment in SLU from August 2007 to August 2010.

Plaintiff also seeks to elicit testimony from Barbara McLean (concerning "Supervision of Plaintiff; Plaintiff's performance under her supervision; role in Plaintiff's evaluation; the effect of all discriminatory employment actions taken against Plaintiff, including his assignment to Queens Tort to go through an Action Plan based on his 2011 negative evaluation at SLU"), Dr. Jeffrey O. Berman, MD (concerning "Testimony regarding Plaintiff's treatment for stress-induced anxiety, neurological problems such as headaches and dizziness. Testimony that he prescribed Plaintiff Nortriptyline which caused him liver damage; and provided opinion supporting Plaintiff's request for reasonable accommodation"), Dr. Noa Micelotta, DO (concerning "Testimony regarding Plaintiff's treatment for stress-induced anxiety, neurological problems such as headaches and dizziness"), and Dr. Michelle S. Dean (concerning "Testimony regarding treatment of Plaintiff following the severe anxiety attack on May 12, 2016, and the nature of his ongoing emotional distress, including anxiety and panic attacks").  See JPTO section viii, Plaintiff's Witnesses.

As shown from Plaintiff's summary of the proposed testimony for Barbara McLean her testimony is not offered about Plaintiff's employment from August 2010 to August 2011

while he was assigned to SLU.  Moreover, although Plaintiff purports to offer the testimony of Barbara McLean, the Chief of Tort Division Queens Borough Office concerning "the effect of all discriminatory employment actions taken against Plaintiff, including his assignment to Queens Tort to go through an Action Plan based on his 2011 negative evaluation at SLU," Ms. McLean has no knowledge of the matters about which Plaintiff complains during his assignment in SLU from August 2010 to August 2011, did not play a role in the decision to place Plaintiff on an action plan or the issuance of a low evaluation to him in August 2011.  See ECF Doc. No. 150 at 9.  Further, the Court has dismissed Plaintiff's claims arising out of the 2012 action plan and 2012 transfer to the Queens Borough Office.  See ECF Doc. No. 150 at 32-35.  Accordingly, her testimony is not relevant to Plaintiff's remaining claims.

Plaintiff also seeks to elicit testimony from treating physicians Dr. Jeffrey O. Berman, Dr. Noa Micelotta, DO, and from Dr. Michelle S. Dean, Psy.D., a psychologist retained by Plaintiff to evaluate him after the May 12, 2016 incident.  See JPTO section viii, Plaintiff's Witnesses.  None of these practitioners were identified as expert witnesses.  While treating physician testimony may be permitted to testify, the key to what a treating physician can testify to without being declared an expert is based on his/her personal knowledge from consultation, examination and treatment of the Plaintiff, not from information acquired from outside sources. See Puglisi v. Town of Hempstead Sanitary Dist. No. 2, No. 11-CV-0445 (PKC), 2013 U.S. Dist. LEXIS 111972, at *18 (E.D.N.Y. Aug. 8, 2013) (internal citations omitted) (emphasis added)

The Second Circuit has held that "expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person."  Barnes v. Anderson, 202 F.3d 150, 159 (2d Cir. 1999); see also Meiselman v. Crown

Heights Hospital, 285 N.Y. 389, 396 (1941) ("Ordinarily, expert medical opinion evidence . . . is required, when the subject-matter to be inquired about is presumed not to be within common knowledge and experience . . . ."). This is particularly true in cases like this one, where a Plaintiff's conditions could well have "multiple potential etiologies." Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004).

Plaintiff purports to offer the testimony of Dr. Berman "regarding Plaintiff's treatment for stress-induced anxiety, neurological problems such as headaches and dizziness," "that he prescribed Plaintiff Nortriptyline which caused him liver damage," and "provided opinion supporting Plaintiff's request for reasonable accommodation." However, Dr. Berman was not identified in Plaintiff's initial disclosures and was only recently identified in Plaintiff's supplemental intial disclosure produced on April 25, 2019. In that supplemental disclosure, Dr. Berman is described as follows: "This individual is likely to have knowledge of Plaintiff's medical and neurological treatment after Plaintiff was transferred to Queens Tort in 2012. Mr. Berman is a board certified physician in the area of neurology and prescribed neurological medication that Plaintiff continually took/takes from 2012 to the present." A copy of that portion of plaintiff's supplemental disclosure is annexed hereto as Appendix A. No mention is made of "treatment for stress-induced anxiety, neurological problems such as headaches and dizziness" or "that he prescribed Plaintiff Nortriptyline which caused him liver damage," and "provided opinion supporting Plaintiff's request for reasonable accommodation." Thus, Defendants had no notice until receipt of plaintiff's portion of the proposed joint pre-trial order that Plaintiff intended to call Dr. Berman to testify about Plaintiff's "stress-induced anxiety," "neurological problems such as headaches and dizziness," "that he prescribed Plaintiff Nortriptyline which caused him liver

damage," or about "Plaintiff's request for reasonable accommodation."   Accordingly, plaintiff should not be permitted to offer the testimony of Dr. Berman.

Moreover, Dr. Berman's testimony may not be offered to establish a causal connection between the anxiety, headaches, dizziness and liver damage for which he treated Plaintiff.  Such causation may only be proven by expert testimony.  Further, medical testimony about Plaintiff's treatment for stress and liver damage would be unduly prejudicial and mislead and cause confusion for the jury by suggesting that such a causal connection exists.  See FRE 403.

Plaintiff purports to offer the testimony of Dr. Michelle S. Dean, Psy.D. a psychologist retained by Plaintiff to evaluate him after the May 12, 2016 incident, "regarding treatment of Plaintiff following the severe anxiety attack on May 12, 2016, and the nature of his ongoing emotional distress, including anxiety and panic attacks."  However, Dr. Dean's testimony may not be offered to establish a causal connection between the May 12, 2016 anxiety attack for which she treated Plaintiff and the only remaining discriminatory treatment claims in this action, which are alleged to have occurred 5-6 years earlier, from August 2010 to August 2011.  Such causation may only be proven by expert testimony.  Further, medical testimony about Plaintiff's treatment for ongoing emotional distress would be unduly prejudicial and mislead and cause confusion for the jury by suggesting that such a causal connection exists.  See Federal Rule of Evidence 403.

Plaintiff also purports to offer the testimony of Dr. Noa Micelotta, DO "regarding Plaintiff's treatment for stress-induced anxiety, neurological problems such as headaches and dizziness."  This proposed witness' testimony would be duplicative of the testimony of Dr. Berman.  In addition, Dr. Micelotta was not previously identified by Plaintiff in his initial disclosures or during discovery.  Accordingly, her testimony concerning Plaintiff's treatment for

stress-induced anxiety would be duplicative, unduly prejudicial and mislead and cause confusion for the jury by suggesting that a causal connection exists between Plaintiff's anxiety and the only remaining discriminatory treatment claims in this action.  See Federal Rules of Evidence 403, 702.

Finally, Plaintiff claims that the emotional distress, liver damage and diabetes he now suffers were caused by the discriminatory treatment to which he was exposed while employed at the Law Department.  However, as noted repeatedly above, the only remaining discriminatory treatment claims in this action are alleged to have occurred from August 2010 to August 2011.  Because Plaintiff is not a doctor or an expert on any medical conditions, he should be precluded from mentioning these injuries at trial and the alleged cause, because allowing "expert" testimony from Plaintiff about causation, without an expert to guide the jury, invites the jury to engage in rank speculation.  Put another way, Plaintiff is not competent to testify to medical conditions or causation of such conditions under Federal Rules of Evidence 701(b), 701 (c) and 702.  In the absence of expert testimony, Plaintiff may not testify that he suffers from a particular medical or psychological diagnosis or that such physical or psychological condition is causally related to the events giving rise to his remaining claim for discrimination.  See Kokoska v. City of Hartford, No. 3:12-cv-01111 (WIG), 2014 U.S. Dist. LEXIS 133262, at *9 (D. Conn. Sep. 23, 2014).

## POINT II

### PLAINTIFF IS COLLATERALLY ESTOPPED FROM CLAIMING THAT HE SUFFERED DAMAGES FOR EMOTIONAL DISTRESS CAUSED BY ON THE JOB STRESSORS RELATED TO THE MAY 12, 2016 INCIDENT.

During a meeting on May 12, 2016 in Karlyne Fequiere-Pierre's office during which Plaintiff and Ms. Fequiere-Pierre discussed work related matters, Plaintiff became visibly upset, began to hyperventilate and cry, dropped to the floor and punched a cabinet several times.

ECF Doc. No. 125 ¶ 104; ECF Doc. No. 125-55, Exhibit CCC, Karlyne Fequiere-Pierre's Workers' Compensation Report of Injury and Witness Statement (Bates Nos. NYC_GOR_0005490 - NYC_GOR_0005492). Plaintiff went on a leave of absence from work as of May 13, 2016. ECF Doc. No. 125 ¶ 105; ECF Doc. No. 125-21, Exhibit U, Pl's Tr. at 271-272; ECF Doc. No. 125-56, Exhibit DDD (Bates Nos. 002805-002806). Plaintiff then filed a claim for workers' compensation. ECF Doc. No. 125 ¶ 106; ECF Doc. No. 125-57, Exhibit EEE (Bates Nos. NYC_GOR_0005505 - NYC_GOR_0005506); ECF Doc. No. 125-58, Exhibit FFF (Bates No. 002772). Plaintiff's claim for workers' compensation was controverted by the Law Department's Workers' Compensation Division. ECF Doc. No. 125 ¶ 108; ECF Doc. No. 125-60, Exhibit HHH (Plaintiff's Bates No. 002632).

Plaintiff had an evidentiary hearing on his claim for workers' compensation before Workers Compensation Law Judge Mark Oberman at which he received testimony and exhibits from the parties. See 12 NYCRR § 300.9; ECF Doc. No. 125 ¶ 109; ECF Doc. No. 125-61, Exhibit III (Plaintiff's Bates No. 001867). After the hearing regarding Plaintiff's workers' compensation claim before an administrative law judge of the New York State Workers' Compensation Board, Plaintiff's claim was disallowed. ECF Doc. No. 125 ¶ 109; ECF Doc. No. 125-61, Exhibit III (Plaintiff's Bates No. 001867); Exhibit U, Plaintiff's Tr. at 270-271. The workers' compensation board found as follows:

> Inasmuch as the testimony of the claimant failed to outline harassment or any other bad faith activity but rather confirmed that on the date of accident Ms. Fequiere-Pierre (the employer's Bronx Tort Division Borough Chief) merely called the claimant into her office to discuss office procedure regarding timely production of paperwork, and in view of the concession of Dr. Dean (the claimant's treating psychologist) that the claimant's immediate panic attack (during which the claimant struck his fist into

a shelf, fracturing his hand) was in response to a specific trigger at the meeting (mention of the claimant's EEOC claim) that Ms. Fequiere-Pierre credibly testified was raised by the claimant himself, I find that the employer's actions that day were lawful personnel actions, not even rising to the level of a disciplinary action, work evaluation, job transfer, demotion, or termination taken in good faith. So, pursuant to WCL Section 2(7), I find that any resultant stress-related injury is not compensable under the WCL. The claim is accordingly disallowed. No further action is planned by the Board at this time.

ECF Doc. No. 125-61, Exhibit III (Plaintiff's Bates No. 001867).   Plaintiff did not appeal this decision. ECF Doc. No. 125 ¶ 110; ECF Doc. No. 125-21, Exhibit U, Plaintiff's Tr. at 338-339.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same state. New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate.  See Burkybile v. Bd. of Educ., 411 F.3d 306, 309-10 (2d Cir. 2005), cert. den., 546 U.S. 1062 (2005).  In New York state, "collateral estoppel bars consideration of an issue when: (1) the issue in question was actually and necessarily decided in a prior proceeding and (2) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the first proceeding.  Dolan v. Roth, 170 Fed. Appx. 743, 746 (2d Cir. 2006).  Plaintiff's Workers' Compensation Board proceeding in which he sought to be compensated for work-related physical and emotional injuries he claims to have suffered as a result of the May 12, 2016 incident, is an administrative adjudication that must be given preclusive effect.  Burkybile, 411 F.3d at 311-12.  Accordingly, the Workers' Compensation Board finding that Plaintiff's claim for mental injuries arising out of the May 12, 2016 incident did not "aris[e] out of and in the course of employment" under NY Workers' Compensation Law

§ 2(7) precludes Plaintiff from claiming that he suffered damages for emotional distress caused by on job stressors related to the May 12, 2016 incident.

## POINT III

### THE COURT SHOULD PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OF OR REFERING TO ANY NON-VOLUNTARY TERMINATION OF EMPLOYMENT OR CONSTRUCTIVE DISCHARGE AND ANY RESULTANT DAMAGES.

In his reply memorandum of law in further support of his motion for leave to file a second amended complaint alleging FMLA claims, Plaintiff stated "Defendants argue that Plaintiff has not sufficiently pled a constructive discharge. (Defs. at 7-8). **To be clear, Plaintiff is not asserting a constructive discharge claim**." See ECF Doc. No. 97 at 9 (emphasis added). Accordingly, Plaintiff must be barred from offering any testimony or other evidence suggesting that his resignation from the Law Department on August 9, 2016 was anything other than a voluntary decision made by Plaintiff and that such decision was not compelled by any actions of Defendants. This would include any claims for economic or emotional distress damages incurred post resignation, i.e., after August 9, 2016.  See Castro v. City of N.Y., 2012 U.S. Dist. LEXIS 23210 (S.D.N.Y. Feb. 23, 2012) (holding that dismissal of Plaintiff's constructive discharge claim bars claim for post termination economic damages).

**POINT IV**

**THE COURT SHOULD PRECLUDE TESTIMONY OR DOCUMENTARY EVIDENCE FROM PLAINTIFF OR OTHER WITNESSES CONCERNING WHAT TRANSPIRED ON MAY 12, 2016 INASMUCH AS DEFENDANTS DO NOT DISPUTE THAT PLAINTIFF WAS INJURED ON THAT DATE AND SUBSEQUENTLY APPLIED FOR BOTH WORKERS' COMPENSATION AND LEAVE UNDER THE FMLA**

As noted above in Point I, this Court has dismissed all of Plaintiff's claims concerning his alleged mistreatment while assigned to the Manhattan Borough Office, the Queens Borough Office and the Bronx Borough Office.  See ECF Dkt. No. 21 at 11-13; ECF Dkt. No. 37 at 11, 19-20, 29-31; ECF Doc. No. 150 at 13-31, 31-36, 39-41, 36-41, 41-43.  Indeed, Plaintiff's disparate treatment and hostile work environment claims are strictly limited to his alleged mistreatment while assigned to SLU in 2010 and 2011.  Id. at 41-43; ECF Dkt. No. 108, SAC at ¶¶ 103, 105-111, 283-285.  Further, inasmuch as Defendants do not dispute that Plaintiff was injured on May 12, 2016 and subsequently applied for both workers' compensation and leave under the FMLA, the exact nature of his injuries is irrelevant to the remaining FMLA interference claim, namely whether the City of New York interfered with Plaintiff's FMLA rights by cancelling his group health insurance coverage shortly before his resignation from City employment.  See Federal Rules of Evidence 401, 402.  Receipt of evidence concerning what transpired on May 12, 2016 or Plaintiff's condition or medical treatment for physical or mental injuries after May 12, 2016 would be unduly prejudicial to the Defendants and mislead and cause confusion for the jury as to connection between that evidence and the discrete issue to be decided in regarding Plaintiff's FMLA claim.  See Federal Rule of Evidence 403.

**POINT V**

**THE COURT SHOULD PRECLUDE TESTIMONY BY MELISSA PRESSLEY, LAURA BONAS BENJAMIN, NATASHA GODBY, OR HUMPHREY UDDOH CONCERNING THE PURPORTED DISCRIMINATORY ATMOSPHERE IN SLU BASED ON THEIR ALLEGED DISCRIMINATORY TREATMENT OR EEO COMPLAINTS.**

Plaintiff seeks to offer the testimony Melissa Pressley, Laura Bonas Benjamin Natasha Godby, and Humphrey Uddoh concerning the purported discriminatory atmosphere in SLU based on their alleged discriminatory treatment or EEO complaints. Defendants object to their testimony for the following reasons.

Melissa Pressley is being offered to testify "regarding her experience as an African-American attorney in SLU and that she filed an internal EEO discrimination complaint as well as a discrimination and retaliation lawsuit charging defendant Marc Andes and SLU Unit Chief defendant Mark Palomino with race discrimination." See JPTO section viii, Plaintiff's Witnesses; see also ECF Doc. No. 138-11. However, Pressley's allegations are remote in time (2004 and 2005) relative to the relevant time period in this action (August 2010 – August 2011) and largely concern her personal disagreements with each of the supervisors with whom she worked. See ECF Doc. No. 138-11. She does not allege that Andes or any other defendant in this action made racially insensitive remarks. Nor does she allege that she received a less than satisfactory evaluation like Plaintiff does in this action.

Laura Bonas Benjamin is being offered to testify "that Andes has a history of making racially insensitive remarks," "that she overheard Andes make a comment about 'black people not knowing what to do if you gave them a million dollars,'" and about "her EEOC complaint and lawsuit for race discrimination and retaliation against the City's New York Health

and Hospitals Corp. ("HHC"), as well as two attorneys in HHC's Medical Litigation Unit."  See JPTO section viii, Plaintiff's Witnesses; see also ECF Doc. No. 138-12.  However, Plaintiff has not alleged that Andes made expressly racially insensitive remarks.  Moreover, this Court noted that the alleged "million dollars" comment has limited probative value in that it was made years before and was unrelated to Gordon's evaluation and is unduly prejudicial to Defendants.  See ECF Doc. No. 150 at 21; FRE 403.  Further, Bonas Benjamin's lawsuit was brought against the NYC City Health and Hospitals (formerly known as the NYC City Health and Hospitals Corporation), not against any of the Defendants in this action.

Natasha Godby is being offered to testify "regarding her experience as an African American-Attorney in SLU and that she filed an internal EEO discrimination complaint for racial discrimination against Defendant Leoussis after she was denied a reasonable accommodation to work from home unlike other white attorneys, which was ultimately found to have a basis in fact on disparate treatment between Godby and her white comparator."  See JPTO section viii, Plaintiff's Witnesses.  However, Ms. Godby was assigned to SLU for only a brief period of time (2006 – 2007), her internal complaint is remote in time (2006) relative to the relevant time period in this action (August 2010 – August 2011), and concerned a request to work at home one day a week for a full year for child care reasons; it did not concern her supervisor's assessment of her job performance.

Humphrey Uddoh is being offered to testify "regarding his experience as an African-American Contract Attorney in SLU and that he filed an internal EEO complaint alleging that he was discriminated against because of his race by Defendants Leoussis, Sanders, and others, with respect to the denial of his application to be hired as a full-time attorney in SLU, based on unfair and discriminatory evaluations performed by Defendant Sanders and other SLU

supervisors, which the Law Department dismissed without serious investigation."   See JPTO section viii, Plaintiff's Witnesses.   However, Mr. Uddoh, was not an employee of the Law Department, he was hired for a brief period of time as a "Contract Attorney" through an employment vendor, he was assigned to SLU for only a brief period of time (2007), his internal complaint is remote in time (2007) relative to the relevant time period in this action (August 2010 – August 2011), and concerned his dissatisfaction with not being hired to a "Senior Attorney position."   Further, he was not supervised or evaluated by Mr. Andes.

In essence, Plaintiff wishes to put these witnesses on the stand to present unrelated allegations of racial discrimination; that they, all former African-American ACCs or contract employees assigned for a brief period, remote in time, to the Law Department's Tort Division, were discriminated against by Defendants on the basis of their race.   Any such testimony is irrelevant under Federal Rules of Evidence 401, 402, and 404.   Additionally, any such testimony would very likely be speculative or impermissible hearsay under Federal Rule of Evidence 802. Finally the prejudice of allowing the jury to hear these witnesses far outweighs any probative value of the testimony, under Federal Rule of Evidence 403.

The testimony of these proposed witnesses about alleged discrimination by Defendants that did not involve Plaintiff would serve to "merely protract the trial by taking the testimony to far afield from [Plaintiff]'s actual claims."   Martin v. Reno, No. 96 Civ. 7646 (NRB), 2000 U.S. Dist. LEXIS 18278, at *10, (S.D.N.Y. Dec. 19, 2000).   Such testimony concerning unrelated allegations of racial discrimination would result in a mini-trial of the claims of these witnesses and any other African-American's allegations they mention, instead of Plaintiff's claims, requiring the jury to evaluate whether each witness' claim had merit, and whether Defendants' response was adequate.   Id.   None of these proposed witnesses have any knowledge

regarding Plaintiff's performance or his assessment by Andes during Plaintiff's tenure in SLU and, in particular, during the period August 2010-August 2011.  Accordingly, their testimony should be barred pursuant to Federal Rule of Evidence 602 as well.

Finally, to allow these witnesses to testify and speculate that they were purported victims of discrimination will only inflame the jury, unfairly prejudicing Defendants.  Manning v. New York University, 2001 U.S. Dist. Lexis 510 *12 (S.D.N.Y. Jan 24, 2001) (unrelated allegations of racial discrimination are inflammatory and risk being substantially prejudicial). Under the FRE 403 balancing test, the possibility of prejudice and confusion here so far outweighs any potential probative value of this evidence and testimony.  As such, the testimony of these witnesses must be precluded.  See Castro v. City of New York, No. 06 Civ. 2253 (KAM) (RER), 2009 U.S. Dist. LEXIS 69723, at *20-*21 (S.D.N.Y. Aug. 10, 2009) (testimony regarding another's "belief" that he was subjected to unlawful discrimination under similar circumstances precluded "by the danger of unfair prejudice to the Defendants, confusion of the issues, misleading the jury, and undue delay … [such testimony] would protect the trial by taking the testimony 'too far afield' from Plaintiff's claims.").

**POINT VI**

**THE COURT SHOULD PRECLUDE TESTIMONY BY PLAINTIFF'S ADVERSARIES AND DUPLICATIVE TESTIMONY FROM FORMER LAW DEPARTMENT HUMAN RESOURCE EMPLOYEES**

Plaintiff seeks to offer the testimony Paul Dansker, John Grill, Dawn Besthoff and Venice Daley.  Defendants object to their testimony for the following reasons.

Paul Dansker is being offered to testify "regarding his experience litigating against Plaintiff in in a wrongful death case for almost four years, and that he regards Plaintiff 'as one of

the more professional and capable attorneys that I have litigated against in my many years dealing with the City.'"  <u>See</u> JPTO section viii, Plaintiff's Witnesses.  John Grill is being offered to testify "regarding his experience litigating against Plaintiff in the case of <u>Zakkarie Carlucci, et al. v. City of New York, et al.</u>, No. 21166/05, Bronx County, New York; and that he found his work 'outstanding.'"  <u>Id.</u>  The proposed opinions of two of Plaintiff's adversaries are irrelevant to any of the remaining claims to be tried in this action.  Neither attorney has personal knowledge of the criteria by which Plaintiff was evaluated or regarding his overall performance for the August 2010 – August 2011.  Their testimony should be precluded pursuant to Federal Rules of Evidence 401, 402, 403, 602 and 701[3].

Dawn Besthoff is being offered to testify regarding her "Role in Plaintiff's application for FMLA; denial of Plaintiff's application by not approving same; her interactions with Plaintiff."  <u>See</u> JPTO section viii, Plaintiff's Witnesses.  Similarly, Venice Daley is being offered to testify regarding her "Role in Plaintiff's application for FMLA; denial of Plaintiff's application by not approving same; her interactions with Plaintiff."  <u>Id.</u>  Both of these individuals have separated from the Law Department.  Defendants intend to call Simone Hobbs, who replaced Dawn Besthoff as the Director of Human Resources.  She is knowledgeable about the events that culminated in the cancellation of his group health insurance shortly before his resignation from City employment.  Defendants request that the Court permit Ms. Hobbs to testify in lieu of Ms. Besthoff and Ms. Daley in light of their retirement.

---

[3] Grill and Dansker were not identified as expert witnesses by Plaintiff and may not offer opinion testimony about the quality of Plaintiff's work performance on the cases for which they were opposing counsel.

**POINT VII**

**THE COURT SHOULD PRECLUDE PLAINTIFF'S ECONOMICS EXPERT FROM OFFERING TESTIMONY OR OTHER EVIDENCE THAT PLAINTIFF SUFFERED ECONOMIC DAMAGES RESULTING FROM A CONSTRUCTIVE DISCHARGE AND SHOULD NOT PERMIT THIS WITNESS TO TESTIFY TO THE JURY AS TO DAMAGES**

Plaintiff seeks to offer the expert testimony of Kristin Kucsma "regarding Plaintiff's economic losses, including lost wages, pension loss and loss of employment benefits." Defendants object to her testimony and seek to limit it for the following reasons.

Only those opinions that will "assist the trier of fact to understand the evidence or to determine a fact in issue" are admissible. Fed. R. Evid. 702. The proponent bears the burden of establishing the admissibility of an expert opinion. Lippe v. Bairnco Corp., 288 B.R. 678, 685 (S.D.N.Y. 2003). Expert testimony must be both "relevant" and "reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). An expert "must do more than propound a particular interpretation of a party's conduct," Lippe, 288 B.R. at 686 (citation omitted), and may not offer opinions that are "speculative or conjectural." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996).

As noted above in Point III, Plaintiff is not asserting a constructive discharge claim in this action. Accordingly, Plaintiff's expert should not be permitted to offer any opinion concerning economic damages that assumes in any way that Plaintiff would have continued to be employed with the Law Department after his resignation on August 9, 2016. Further, Plaintiff's expert may not offer testimony about her opinion to the jury. Rather, such testimony is the province of the Court. See Hamza v. Saks Fifth Ave., Inc., 2011 U.S. Dist. LEXIS 139132, at *10 (S.D.N.Y. Dec. 5, 2011) ("this Court agrees with the defendant that case law is clear that the issue

of back and front pay damages in a Title VII retaliation case is to be resolved by this Court rather than a jury. . . . This includes testimony of the **plaintiff's expert economic damages witness, Michael Soudry, who will also not be permitted to testify to the jury as to damages**. Should the jury find liability on the part of the defendant at trial, any testimony or exhibits regarding front and back pay damages shall be submitted to this Court following the verdict.") (emphasis added).

## POINT VIII

### PLAINTIFF SHOULD BE PRECLUDED DESIGNATING THE DEPOSITIONS OF CERTAIN INDIVIDUALS AS PART OF HIS CASE IN CHIEF

Plaintiff wishes to designate excerpts from the deposition testimony of eleven current or former employees of the Law Department. Under Rule 611(a), the Court can "exercise reasonable control over the mode and order" of "presenting evidence so as to make those procedures effective for determining the truth and protect avoid wasting time. See FED. R. EVID. 611; Buchwald v. Renco Grp., Inc., No. 13 Civ. 7948 (AJN), 2014 U.S. Dist. LEXIS 118239, at *5-6 (S.D.N.Y. Aug. 22, 2014). The Court should exercise that control here and preclude Plaintiff's designation of deposition excerpts in support of his case in chief, with, of course, the exception of impeachment.

First, some of the deposition testimony pertains to claims that are no longer a part of this action, i.e. the testimony of Michael Cardozo, Barbara McLean, and Karlyne Fequiere-Pierre. The depositions of these individuals are not relevant, offer no probative value, would only confuse the jury. See also Luitpold Pharm., Inc. v. ED. Geistlich Sohne A.G. Fur Chemische Industrie, No. 11 Civ. 681 (KBF), 2015 U.S. Dist. LEXIS 123591, at *44 (S.D.N.Y. Sep. 16, 2015) ("None of this testimony is probative of a fact in issue. The entirety of his proposed testimony on this issue is a sideshow that, even if relevant — and the Court finds it difficult to

imagine how it could be — would be confusing, misleading, and a waste of the jury's time. The Court finds that those considerations substantially outweigh any de minimis probative value."). The depositions of these individuals do not address the three remaining claims in this action. These designated depositions are nothing but a sideshow.  Thus, these deposition designations should be summarily precluded.  See FED. R. EVID. 402, 403.  See also Soley v. Wasserman, No. 08 Civ. 9262 (KMW), 2013 U.S. Dist. LEXIS 99969, at *4 (S.D.N.Y. July 16, 2013) (granting objections to the designation of depositions related to previously dismissed claims).

Second, as to the testimony of Defendants Marc Andes, Fay Leoussis, Gayle Sanders and Mark Palomino, and non-party witnesses Sosimo Fabian and Muriel Goode-Trufant, in "light of the importance that each side attaches to the witnesses in question and the preference for live testimony dictated by both common sense and Second Circuit case law," Plaintiff should be precluded from offering depositions in lieu of live testimony.  Buchwald, 2014 U.S. Dist. LEXIS 118239, at *6-7, citing Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939) (Hand, L. J.) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand.").  This Circuit "think[s] the deposition incompetent."  Napier, 102 F.2d at 468.  See also Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams., 262 F.R.D. 293, 300-01 (S.D.N.Y. 2009); Kolb v. Cty. of Suffolk, 109 F.R.D. 125 (E.D.N.Y. 1985) (citing cases) ("Clearly, testimony by deposition is less desirable than oral testimony and should be used as a substitute only under very limited circumstances.").  It is unclear why the jury—which should hear testimony live, assess the credibility of witnesses, and evaluate the claims before it—should be bored by the designated depositions instead of live testimony.  And where Defendants will testify in person, also presenting depositions is cumulative and wastes the jury's time.  See FED. R. EVID. 403.  Furthermore, as the declarants are not unavailable as delineated by Rule 804, there

is no reason for why their depositions should be offered instead of in person testimony.  See FED. R. EVID. 804.

Finally, as to non-party witnesses Dawn Besthoff and Venice Daley, as noted above in Point VI, Defendants intend to call Simone Hobbs, who replaced Dawn Besthoff as the Law Department's Director of Human Resources.  She is knowledgeable about the events that culminated in the cancellation of Plaintiff's group health insurance shortly before his resignation from City employment.  Defendants request that the Court permit Ms. Hobbs to testify live in lieu of Ms. Besthoff and Ms. Daley in light of their separations from employment with the Law Department.  The reading of deposition testimony would be duplicative, cumulative and a waste of the jury's time.  See FED. R. EVID. 403.

## POINT IX

## CERTAIN EXHIBITS ARE INADMISSIBLE AND MUST BE EXCLUDED BECAUSE THEY VIOLATE THE FEDERAL RULES OF EVIDENCE[4]

Evidence must be relevant to be received at trial.  F.R.E. 401.  Where evidence is not relevant, there is no need to consider whether it meets any other test of admissibility.  Janetka v. Dabe, 892 F.2d 187 (2d Cir. 1989) (district court properly held that the investigative report of a state Temporary Commission of Investigation finding that the county tolerated and approved of misconduct by individual police officers was not relevant in malicious prosecution and excessive force case).  Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

---

[4] The defense reserves the right to object to all of Plaintiff's exhibits on the grounds of authenticity.

Hearsay evidence is not admissible except under limited exceptions provided in the Federal Rules of Evidence.  F.R.E. 802.  See, e.g., Tokio Marine & Fire Ins. Co. v. Rosner, 206 Fed. Appx. 90, 95 (2nd Cir. 2006) (affirming District Court's grant of summary judgment and explaining that a newspaper "article is inadmissible hearsay"); Holmes v. Gaynor, 313 F. Supp. 2d 345, 358 n.1 (S.D.N.Y. 2004)(granting Defendants' summary judgment and specifically finding that Plaintiff could not establish a triable issue of fact based upon a newspaper article, as such article constitutes inadmissible hearsay). Federal Rule of Evidence 801 defines  "hearsay" as: "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

As noted above, the sole remaining issues to be tried are as follows:

1)      Plaintiff's disparate treatment claims under Title VII, the NYSHRL and the NYCHRL against the City concerning Plaintiff being denied a promotion to Senior Counsel in 2011 and the low 2011 performance evaluation, Plaintiff's disparate treatment claims under § 1981, the NYSHRL and the NYCHRL against Defendants Leoussis, Andes, Sanders and Palomino concerning Plaintiff being denied a promotion to Senior Counsel in 2011 and the low 2011 performance evaluation; and Plaintiff's disparate treatment claim under § 1981 concerning Plaintiff being denied a promotion to Senior Counsel in 2010.[5]

2)      Plaintiff's hostile work environment claims under the NYCHRL as to Defendants Andes, Sanders, Palomino, and Leoussis in 2011; and

3)      Plaintiff's FMLA interference claim against the City that his city-provided group health benefits entitlement was prematurely terminated.

---

[5] Plaintiff's Title VII, NYSHRL and NYCHRL claims regarding the 2010 promotion are time-barred.  See ECF Dkt. No. 37 at 11 and ECF Dkt. No. 21 at 11-13.

However, as discussed in more detail below, Plaintiff seeks to offer introduce 170 trial exhibits, most of which cannot provide much, if any relevant information concerning the limited remaining claims in this action, much of which is hearsay, and which would inevitably cause significant juror confusion and constitute a waste of time.  Indicative of the lack of serious deliberation made prior to compiling Plaintiff's exhibit list is Plaintiff's exhibit 162, "Pictures of Plaintiff's medication, bates stamped P00736."  Thus, as set forth in the Joint Pre-trial Order, Defendants object to introduction of Plaintiff's Exhibits 1-20, 27, 33, 35-37, 39-56, 59-74, 76, 78-93, 95-99, 101, 108-112, 114, 118-119, 121-128, 130-140, 142-144, 147-164, and 166-176.[6]

Most of the exhibits are objectionable on multiple grounds of relevance, undue prejudice, waste of court's time and hearsay under FRE 401, 402, 402, and 802.  For example Plaintiff's exhibits 1, 2, and 138 are Plaintiff EEOC charge and Defendants' position statement in response and Plaintiff's reply submitted to the EEOC.  Both are clearly hearsay and not relevant to the discrete remaining claims in this action.  Plaintiff will testify about the discriminatory treatment to which he contends he was subjected.  There is no need to introduce these exhibits. Plaintiff similarly offers exhibits 5-8 concerning the Law Department's EEO Policy and Mission Statement.  None of these documents are relevant to any remaining claim and are also clearly hearsay.  Plaintiff similarly offers exhibits 9-11, and 27 concerning the Tort Division overall evaluation benchmarks and evaluation preparation, not relevant to the evaluations of Plaintiff and his alleged comparators, in addition to being hearsay.

Additional groupings of inappropriate proposed exhibits are as follows: Exhibits 35, 47, 147, and 172 (decisions in four of Plaintiff's assigned cases – Plaintiff is presumably able to testify about these cases and the documents therefore are not required); Exhibits 12-16, 36, 41,

---

[6] Plaintiff's Proposed Exhibits intentionally skip six exhibit numbers.

48, 121, 139, and 149 (the evaluations of defendant Andes, and former SLU attorneys Tzipora

Teichman Kalish, Lori Manning, Louis Gerber, Eylan Schulman, and Mary Ann Holden);

Exhibits 4, 42, 64, and 142, 153-155 (the resumes of Marc Andes, Mark Palomino, Michael

Cardozo and Plaintiff and Plaintiff's educational record); Exhibits 43-46, 67-69, and 125

(documents related to EEO complaints made by other SLU attorneys – they are inadmissible for

the same reasons discussed above in Point V); Exhibits 50-52, 85-86, 122 (documents related to

Plaintiff's 2012 action plan, which is no longer a remaining claim in this case); Exhibits 5 and 56

(sign in sheets for EEO training – there is no claim about the failure to provide Defendants with

EEO training); Exhibits 20, 33, 39, 49-52, 59-63, 65, 70-73, 76, 78-93, 122-124, 142-144, 150-

152, 156, 160-161, 164, 166, and 169 (Multiple exhibits that either predate or postdate the time-

period covered by the remaining claims); Exhibit 163 (Plaintiff's Response to his August 2011

Performance Evaluation – this exhibit is clearly hearsay and Plaintiff is presumably able to testify

about his disagreement with the evaluation); Exhibits 18, 19, 40, 66, 70-73, 150, 167, 168, and

170 (irrelevant lists, rosters and spreadsheets of employees at the Law Department); Exhibits 3,

55, 126, 130, and 173 (discovery responses from both Plaintiff and Defendants); Exhibits 37 and

54 (average caseload statistics for the Tort Division); Exhibits 95-98, 101, 108, 110, 112, 114,

118, 119, 128, 131-134 (documents describing Plaintiff's medical condition in May 2016 –

August 2016 – these documents are irrelevant to Plaintiff's FMLA interference claim and would

be unduly prejudicial and also inadmissible for the reasons explained in Point I); Exhibit 135

(documents provided by Plaintiff to his expert, which are clearly hearsay, and the expert will

presumably testify as to the documents he or she relied upon in arriving at his or her expert

opinion); Exhibits 136 and 137 (demonstrative charts that have not yet been provided to

Defendants); Exhibit 140 (the transcript of the deposition taken of Laura Bonas Benjamin in

<u>Bonas Benjamin v. HHC</u>, 11-cv-5096 (S.D.N.Y.) – inadmissible under FRCP 32 and for the same reasons discussed above in Point V.  Finally, many of Plaintiff's proposed exhibits, should they be received in evidence, are subject to a protective order signed by Judge Francis.  <u>See</u> ECF Doc. No. 47.  Defendants reserve the right to address redactions or other measures to protect their confidential nature that may be needed should any of the covered documents be received in evidence.

## POINT X

### PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING FAILED THEORIES OF LIABILITY AND INTRODUCING EVIDENCE CONCERNING FAILED CLAIMS.

As noted in Defendants' preliminary statement, the only claims that remain to be tried are:

1)      Plaintiff's disparate treatment claims under Title VII, the NYSHRL and the NYCHRL against the City concerning Plaintiff being denied a promotion to Senior Counsel in 2011 and the low 2011 performance evaluation, Plaintiff's disparate treatment claims under § 1981, the NYSHRL and the NYCHRL against Defendants Leoussis, Andes, Sanders and Palomino concerning Plaintiff being denied a promotion to Senior Counsel in 2011 and the low 2011 performance evaluation; and Plaintiff's disparate treatment claim under § 1981 concerning Plaintiff being denied a promotion to Senior Counsel in 2010.[7]

2)      Plaintiff's hostile work environment claims under the NYCHRL as to Defendants Andes, Sanders, Palomino, and Leoussis in 2011; and

---

[7] Plaintiff's Title VII, NYSHRL and NYCHRL claims regarding the 2010 promotion are time-barred.  <u>See</u> ECF Dkt. No. 37 at 11 and ECF Dkt. No. 21 at 11-13.

3)     Plaintiff's FMLA interference claim against the City that his city-provided group health benefits entitlement was prematurely terminated.

Accordingly, to the extent not already discussed above, Plaintiff should be precluded from arguing failed theories of liability and introducing evidence concerning failed claims.  See Hamza v. Saks Fifth Ave., Inc., No. 07 Civ. 5974 (FPS), 2011 U.S. Dist. LEXIS 139132, at *21-*22 (S.D.N.Y. Dec. 5, 2011) (precluding Plaintiff from introducing any evidence or testimony pertaining to Plaintiff's dismissed FMLA claim as "wholly irrelevant to any issue in contention in her current [discrimination] claim"); Levitant v. City of New York Human Res. Admin., No. 05 Civ. 230 (KAM)(MDG), 2011 U.S. Dist. LEXIS 20742 at *13-*14 (E.D.N.Y. Feb. 28, 2011) (granting defendant's motion to preclude Plaintiff  from introducing evidence regarding Plaintiff's dismissed claims); Eng v. Blood, No. 04 Civ. 1146 (NAM)(GHL), 2008 U.S. Dist. LEXIS 54802, *9-11 (N.D.N.Y. July 17, 2008) (barring testimony or evidence on emotional damages stemming from dismissed claim as not relevant to remaining claim); Morales v. N.Y. Dep't of Labor, No. 06-CV-899 (MAD), 2012 U.S. Dist. LEXIS 92075, 2012 WL 2571292, at *4 (N.D.N.Y. July 3, 2012) (finding "that any testimony or evidence about Plaintiff's previously dismissed discrimination claim is excluded" as irrelevant and prohibiting evidence regarding events prior to February 16, 2006 where a "prior Order narrowed the scope of Plaintiff's retaliation claim to protected activities that occurred on or after February 16, 2006"), aff'd, 530 Fed. Appx. 13 (2d Cir. 2013); Noel v. Inc. Vill. of Lake Success, No. CV 13-211 (AKT), 2016 U.S. Dist. LEXIS 22468, at *6 (E.D.N.Y. Feb. 24, 2016) ("Previously dismissed claims, and evidence thereof, are not 'of consequence in determining the action; and therefore will be excluded.'")

## CONCLUSION

For all of the reasons stated above, Defendants request an Order precluding Plaintiff from presenting the witnesses, testimony, and evidence specified above.   Defendants respectfully further request any additional relief that the Court deems just and proper.

Dated:        New York, New York
              November 1, 2019

                              **GEORGIA M. PESTANA**
                              Acting Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-166/2-186
                              New York, New York 10007
                              Phone: (212) 356-2437/2444
                              brosenba@law.nyc.gov/dosaint@law.nyc.gov


                      By:     */s/ Bruce Rosenbaum*
                              Bruce Rosenbaum
                              Assistant Corporation Counsel

                              Dominique Saint-Fort
                              Assistant Corporation Counsel

Bruce Rosenbaum,
Dominique Saint-Fort,
  Of Counsel.

# APPENDIX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ROBERT W. GORDON, ESQ.,

Plaintiff,

-against-

THE CITY OF NEW YORK, MARC ANDES, MARK
PALOMINO, GAYLE SANDERS, FAY LEOUSSIS,
MICHAEL A. CARDOZO, DAVID SANTORO, JOHN
DOE(S) and JANE DOE(S) (names currently unknown)
each in his/her official and individual capacities,

Defendants.

-----------------------------------------------------------------------X

**Docket No.:**
**14-cv-6115 (JPO)(JCF)**

**PLAINTIFF'S**
**SUPPLEMENTAL INITIAL**
**DISCLOSURE**
**STATEMENT PURSUANT**
**TO FED.R.CIV.P. 26(a)(1)**

Plaintiff, ROBERT GORDON, by his attorneys, MADUEGBUNA COOPER LLP,

subject to express reservation of rights to revise, supplement, and object to the use of, any

information disclosed herein, makes the following supplemental initial disclosures, as required

by Fed. R. Civ. P. 26(a)(1):

### 1. Individuals Likely To Have Discoverable Information

Individuals likely to have discoverable information, who Plaintiff may use to support his

claims:

1)   **Mr. Robert W. Gordon, Esq. (plaintiff)**
     38 Tomahawk Drive
     White Plains, NY 10603

     This individual possesses personal knowledge of the claims alleged in this
     lawsuit.

2)   **Ms. Melissa Pressley**
     1232 Schenectady Avenue
     Brooklyn, NY 11203
     *(address is upon information and belief)*

     This individual, an African-American, is likely to have knowledge of
     similar treatment as alleged in plaintiff's complaint of African-American

employees under the Special Litigation Unit ("SLU") of the New York City Law Department as she was an employee in SLU from approximately the year 2004 to 2007 and was also under the supervision of Defendant Marc Andes. She is also likely to know of the New York City Law Department's ("Law Department") internal EEO process, the evaluation process, general milue of SLU, and also had/has a lawsuit against some of the same individuals in the above named caption.

3) **Ms. Laura Z. Bonas Benjamin**
   (*address currently unknown*)
   This individual, an African/Caribbean-American, is likely to have knowledge of similar treatment as alleged in plaintiff's complaint of African-American employees under the Special Litigation Unit of the New York City Law Department ("SLU") as upon information and belief she was an employee in SLU prior to the Medical Malpractice division of SLU separating to be under the Health and Hospitals Corporation in 2007. She likewise sued for employment discrimination under the index number 11 Civ. 5096 (VSB) Southern District of New York. She was an employee of the New York City Law Department from approximately the year 2001 to 2007. This individual is a former employee of the New York City Law Department and thus this individual's last known address and telephone number is in the possession of the New York City Law Department.

4) **Ms. Natasha Godby**
   (*address currently unknown*)

   This individual, an African-American, is likely to have knowledge of similar treatment as alleged in plaintiff's complaint of African-American employees under the Special Litigation Unit of the New York City Law Department ("SLU") as she was an employee in SLU from approximately the year 2004 to 2007 and was also under the supervision of Defendant Marc Andes.

5) **Dr. Jeffrey O. Berman, MD**
   210 Westchester Avenue
   White Plains, NY 10604-2901

   This individual is likely to have knowledge of Plaintiff's medical and neurological treatment after Plaintiff was transferred to Queens Tort in 2012. Mr. Berman is a board certified physician in the area of neurology and prescribed neurological medication that Plaintiff continually took /takes from 2012 to the present.

6) **Ms. Karlyne Fequiere-Pierre**
   New York City Law Department
   198 East 161st Street, Suite 3

Bronx, New York 10451

This individual, an African/Caribbean-American, is likely to have knowledge of similar treatment as alleged in plaintiff's complaint of African-American employees under the Special Litigation Unit of the New York City Law Department ("SLU") as she was an employee in SLU sometime prior to 2007 and had specific interactions with Defendant Mark Palomino of a racial nature. This individual is currently an employee of the New York City Law Department in the Bronx.

7)   **Mr. Paul Dansker, Esq.**
     30 Vesey Street
     New York, NY 10007

     This individual is likely to have knowledge of Plaintiff's professional conduct concerning a lawsuit that was handled by the Plaintiff during the 2011 Law Department evaluation period, as this individual was opposing counsel on that case. This information is relevant to the contents of Plaintiff's 2011 performance evaluation.

8)   **Mr. John Grill, Esq.**
     269 West 231st Street
     Bronx, N.Y. 10463

     This individual is likely to have knowledge of Plaintiff's professional conduct concerning a lawsuit that was handled by the Plaintiff during the 2011 Law Department evaluation period as this individual was opposing counsel on the case. This information is relevant to the contents of Plaintiff's 2011 performance evaluation.

9)   **Ms. Stephanie Messafi**
     Rye Brook, NY
     (*address currently unknown*)

     This individual is likely to have knowledge of background facts related to Plaintiff's retaliation claims. Ms. Messaffi was Plaintiff's direct supervisor in 2004-2005. This individual is a former employee of the New York City Law Department and thus this individual's last known address and telephone number is in the possession of the New York City Law Department.

10)  **Mr. Michael Chadirjian**
     New York City Law Department
     100 Church Street
     New York, New York 10007

This individual is likely to have knowledge of background facts related to
Plaintiff's retaliation claims. This individual is a current employee of the
New York City Law Department in Manhattan Torts and thus this
individual's last known address and telephone number is in the possession
of the New York City Law Department.

11)   **A Witness from the New York City Employee Retirement System
("NYCERS")**
(*address currently unknown*)

This individual is likely to have knowledge of how City of New York
employee pensions are valued and calculated based on salary and the
impact salary has on the value of an employee's pension.

12)   **Mr. Joel H. Rosner, Esq.**
757 Third Avenue
New York, NY 10017

This individual is likely to have knowledge of the working conditions in
the Manhattan Borough Unit f.k.a. the Manhattan Trial Unit (MTU) as he
was employed at the Law Department in MTU from 2003 to at least 2005,
contemporaneous with Plaintiff's employment there and can attest to the
working conditions in MTU as expressed in Plaintiff's 2005 letter.

13)   **Ms. Christina Fernandez, Esq.**
(*address currently unknown*)

This individual is likely to have knowledge of the working conditions in
the Manhattan Borough Unit f.k.a. the Manhattan Trial Unit (MTU) as she
was employed in at the Law Department in MTU from 2003 to at least
2005, contemporaneous with Plaintiff's employment there and can attest
to the working conditions in MTU as expressed in Plaintiff's 2005 letter.
This individual is a former employee of the New York City Law
Department and thus this individual's last known address and telephone
number is in the possession of the New York City Law Department.

14)   **Dr. Carolyn H. Thompson, MD**
210 Westchester Avenue
White Plains, NY 10604-2901

This individual diagnosed Plaintiff with Type 2 diabetes on October 8,
2016 and is likely to support Plaintiff's position that the stress of his
demotion to a hostile working environment of the borough units triggered
his Type 2 diabetes condition, a life threatening and permanent physical
condition. This individual also treated Plaintiff after his severe anxiety
attack on May 12, 2016.

15) **Ms. Barbara McLean**
New York City Law Department
89-17 Sutphin Blvd., 4th Floor
Jamaica, New York 11435

This individual is the Queens Tort Borough chief of the Law Department. She can testify that she would not have known of Plaintiff's "Action Plan" and 2011 evaluation, had not Defendant Leoussis insisted that Plaintiff carry out his Action Plan under Ms. McLean's supervision. Thus, Defendant Leoussis deliberately spread and published Plaintiff's humiliation (by way of his 2011 performance evaluation) far beyond the circle of individuals necessary, thus adding to Plaintiff's distress, stress, and damages. This individual is currently an employee of the Law Department in Queens, thus her address and telephone number are known to the defendants.

16) **Mr. Marc Andes**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a senior manager in SLU and was Plaintiff's supervisor from 2007 to 2011. He is likely to have knowledge of prior Equal Employment Opportunity ("EEO") complaints made within SLU, Plaintiff's performance evaluations from 2007 to 2011 (including Plaintiff's poor 2011 evaluation), allegations that Plaintiff was being evaluated too highly and comments that Plaintiff should no longer work in SLU.

17) **Mr. Mark Palomino**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is the Unit Chief and head of SLU and is likely to have knowledge of prior Equal Employment Opportunity ("EEO") complaints made within SLU, Plaintiff's 2011 performance evaluation and Plaintiff's attempt to take a leave of absence in or around July 2011.

18) **Ms. Gayle Sanders**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is the Unit Chief and head of SLU and is likely to have knowledge of prior EEO complaints made within SLU and Plaintiff's 2011 performance evaluation.

19) **Ms. Fay Leoussis**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is the Division Chief of the Tort Division and is likely to have knowledge of Plaintiff's August 23, 2005 letter concerning SLU practices and attempts to discredit him as a result of his letter, Plaintiff's 2005 performance evaluation, discussions to place Plaintiff on an action plan for improvement, Plaintiff's non-selection to the Senior Counsel Program in 2008 and Division Chief's Award in 2009, Plaintiff's 2011 performance evaluation and subsequent Corrective Action Plan, the selections of Tzipora Teichman and Louis Gerber to Senior Counsel positions between 2011 and 2012 and the transfer of Plaintiff to a borough unit in 2012.

20) **Mr. David Santoro**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is the Deputy Chief of the Tort Division and is likely to have knowledge of Plaintiff's 2005 performance evaluation and discussions to place Plaintiff on an action plan for improvement.

21) **Mr. Michael Cardozo**
Proskauer Rose LLP
11 Times Square
New York, New York 10036

This individual is the former Corporation Counsel of the City of New York and is likely to have knowledge of the "enhanced" Senior Counsel Program and how Assistant Corporation Counsels ("ACC") are selected, the selections of Tzipora Teichman and Louis Gerber to Senior Counsel positions between 2011 and 2012 and policies, practices and customs of the Law Department.

22) **Ms. Muriel Goode-Trufant**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is the Equal Employment Officer of the Law Department and is likely to have knowledge of Plaintiff's 2006 EEO complaint alleging discrimination and retaliation, including his poor 2005 performance evaluation.

23) **Ms. Tzipora Teichman**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a Senior Counsel with SLU and is likely to have knowledge of the Law Department's promotion of SLU attorneys to the Senior Counsel position between 2011 and 2012.

24) **Mr. Louis Gerber**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a Senior Counsel with SLU and is likely to have knowledge of the Law Department's promotion of SLU attorneys to the Senior Counsel position between 2011 and 2012.

25) **Mr. Eylan Schulman**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a Senior Counsel with SLU and is likely to have knowledge of the Law Department's promotion of SLU attorneys to the Senior Counsel position between 2011 and 2012.

26) **Ms. Janet Siegel Brown**
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611

This individual is a former ACC and is likely to have knowledge of the Law Department's attempts to increase the number of ACCs who had attended highly ranked law schools, and specifically recruit graduates of New York University School of Law.

27) **Ms. Maurine Netchin**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a senior manager of the Tort Division and is likely to have knowledge of Plaintiff's 2005 performance evaluation and discussions to place Plaintiff on an action plan for improvement.

28) **Mr. Foster Mills**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a managing attorney of the Tort Division and is likely to have knowledge of Plaintiff's 2005 performance evaluation and discussions to place Plaintiff on an action plan for improvement.

29) **Ms. Elizabeth Gallay**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is an Assistant Unit Chief in SLU and is likely to have knowledge of prior EEO complaints made within SLU and Plaintiff's 2011 performance evaluation.

30) **Ms. Amy London**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is an Assistant Unit Chief in SLU and is likely to have knowledge of prior EEO complaints made within SLU and Plaintiff's 2011 performance evaluation.

31) **Ms. Judith Davidow**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is an Assistant Unit Chief in SLU and is likely to have knowledge of prior EEO complaints made within SLU and Plaintiff's 2011 performance evaluation.

32) **Mr. Christopher Murdoch**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is an Assistant Unit Chief in SLU and is likely to have knowledge of prior EEO complaints made within SLU and Plaintiff's 2011 performance evaluation.

33) **Mr. Brian Cody**
New York City Law Department
89-17 Sutphin Blvd., 4th Floor
Jamaica, New York 11435

This individual is a Team Leader of the Queens Tort Division and is likely to have knowledge of Plaintiff's 2012 performance evaluation and discussions to place Plaintiff on an action plan for improvement.

34) **Mr. Kenneth Sasmor**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a Deputy Unit Chief in SLU and is likely to have knowledge of prior EEO complaints made within SLU and Plaintiff's 2011 performance evaluation.

35) **Ms. Nicole Suarez-Dullass**
New York City Law Department
89-17 Sutphin Blvd., 4th Floor
Jamaica, New York 11435

This individual is a Team Leader of the Queens Tort Division and is likely to have knowledge of Plaintiff's 2012 performance evaluation and discussions to place Plaintiff on an action plan for improvement.

36) **Ms. Ellen Lombardi**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a unit chief in SLU and is likely to have knowledge of prior EEO complaints made within SLU and Plaintiff's 2011 performance evaluation.

37) **Ms. Angela Cruz**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is a Senior Counsel with SLU and is likely to have knowledge of the Law Department's promotion of SLU attorneys to the Senior Counsel position between 2007 and 2008.

38) **Ms. Karlyne Fequiere-Pierre**
New York City Law Department
198 East 161st Street, 3rd Floor
Bronx, New York 10451

This individual is the Borough Chief of Bronx Torts and one of Plaintiff's supervisors and has knowledge of his performance in the unit.

39) **Ms. Betty Lawrence-Lewis**
(*address currently unknown*)

This individual was one of Plaintiff's supervisors in Bronx Torts and has knowledge of his performance in the unit.

40) **Mr. Sosimo Fabian**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is the EEO officer of the Law Department and has knowledge of Plaintiff's leave in May 2016 and requests for FMLA.

41) **Ms. Dawn Besthoff**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is an EEO Career Counselor of the Law Department and has knowledge of Plaintiff's leave in May 2016 and requests for FMLA.

42) **Ms. Simone Hobbs**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is an administrative attorney with the Law Department and has knowledge of Plaintiff's leave in May 2016 and requests for FMLA.

43) **Ms. Venice Daley**
New York City Law Department
100 Church Street
New York, New York 10007

This individual is the chief of payroll and timekeeping with the Law Department and has knowledge of Plaintiff's leave in May 2016 and requests for FMLA.

44)   **Mr. Stuart Smith**
      (*address currently unknown*)

This individual, an African-American, is likely to have knowledge of similar treatment as alleged in plaintiff's complaint of African-American employees under SLU as she was an employee in SLU under the supervision of Defendant Marc Andes.

44)   **Mr. Humphrey Uddoh**
      New York City Transit Authority
      130 Livingston Street
      Brooklyn, NY 11201

This individual, an African-American, is likely to have knowledge of similar treatment as alleged in plaintiff's complaint of African-American employees under SLU as he was an employee in SLU under the supervision of Defendant Marc Andes and developed diabetes and liver damage as a result of discrimination and retaliation.

45)   **Ms. Lavanya Pisupati**
      New York City Law Department
      198 East 161st Street, 3rd Floor
      Bronx, New York 10451

This individual was Plaintiff's direct supervisor in Bronx Torts, graded him highly in two performance evaluations and has additional knowledge of his performance in the unit.

46)   **Dr. David E. Layman, PH. D., ABPP**
      Advanced Neuropsychology Services
      226 26th Street, 8th Floor
      New York, New York 10001

This individual treated Plaintiff after his severe anxiety attack on May 12, 2016 and has knowledge of the defendants' discriminatory and retaliatory conduct against him.

47)   **Dr. Robert S. Brown**
      Weill Cornell
      Center for Liver Disease and Transplantation
      525 East 68th Street

New York, NY 10065

This individual treated Plaintiff after his diagnosis of fatty liver in October 2012 and has knowledge of the defendants' discriminatory and retaliatory conduct against him.

48) **Dr. Michelle S. Dean**
   310 East Shore Road, Suite 100
   Great Neck, New York 11023

   This individual treated Plaintiff after his severe anxiety attack on May 12, 2016 and has knowledge of the defendants' discriminatory and retaliatory conduct against him.

49) **Dr. Elina Spektor**
   310 East Shore Road, Suite 100
   Great Neck, New York 11023

   This individual treated Plaintiff after his severe anxiety attack on May 12, 2016 and has knowledge of the defendants' discriminatory and retaliatory conduct against him.

50) **Dr. Young Don Oh**
   210 Westchester Avenue
   White Plains, NY 10604

   This individual treated Plaintiff's right hand fracture resulting from the severe anxiety attack on May 12, 2016.

51) **Kristin K. Kucsma, M.A.**
   Sobel Tinari Economics Group
   293 Eisenhower Parkway, Suite 190
   Livingston, NJ 07039

   This individual provided a forensic economic analysis of Plaintiff's damages and has knowledge of such.

52) **Stephen B. Levinson, Ph. D.**
   Sobel Tinari Economics Group
   293 Eisenhower Parkway, Suite 190
   Livingston, NJ 07039

   This individual provided a forensic economic analysis of Plaintiff's damages and has knowledge of such.

## 2. **Documents Which Plaintiff May Use to Support His Claims**

At this time, Plaintiff identifies the following categories of documents that he may use to support his claims:

1.   Correspondence between Plaintiff and Defendants

2.   Plaintiff's Tax Returns

3.   Plaintiff's Communications and Records

4.   Defendants' Communications and Records

5.   Plaintiff's Resume, Transcripts, Diplomas, and Certificates

6.   Plaintiff's Performance Evaluations and Corrective Action Plans

7.   Plaintiff's EEO and EEOC Complaints

8.   City of New York Equal Employment Policies and Procedures

9.   Plaintiff's Pension Statements

## 3. **Computation of Any Category of Damages, etc.:**

The damages suffered by Plaintiffs and the class are ongoing, including significant monetary loss and damages, including the loss of past and future earnings and other employment benefits, in addition to severe emotional distress, lasting embarrassment, humiliation and anguish, as well as other incidental and consequential damages and expenses that are yet to be fully computed but include the following:

1.   Economic Damages:

a.   Adjusted Earnings:  as much as $199,601.00 as of April 25, 2019

b.   Net Pension Benefits: $502,189.00 in lost pension benefits from the present to Plaintiff's anticipated retirement in 2032.

c.   Cost of Health Insurance: as much as $205,578.00 as of April 25, 2019

d.   Compensation for Excess Taxes: as much as $276,135.00[1] as of April 25, 2019

e.   Legal Fees and Expenses personally paid by Plaintiff, excluding attorneys' fees: estimated to be no less than $50,000.00.

f.   Medical expenses (out of pocket for co-pay and prescription or over the counter medication): estimated to be no less than $10,000.00 and continuing

g.   Three months of lost sick time as a result of taking leave in May 2016, estimated to be no less than $14,000.00

h.   Daughter's college health insurance: $4,220.00

i.   Sessions with personal trainer at a fitness center: $1,045.00

j.   Prejudgment interest: as much as $220,495.00 as of April 25, 2019

k.   Additional expenses and reimbursement of Plaintiff's time, including, Postage, cost in labor hours to draft EEOC Complaint, to draft EEOC Reply, to draft Complaint, and to draft opposition to City's motion to dismiss: estimated to be no less than $50,000.00.

Total Economic loss:   Estimated to be **as much as $1,533,263.00 and continuing.**

In addition, Plaintiffs will seek statutory attorney's fees as the prevailing party in this action, presently estimated to be no less than **$550,000.00**, as of April 25, 2019.

2.   Non-economic damages:

a.   Emotional Distress of a Non-Garden Variety Nature for physical and mental injuries **estimated to be no less than $750,000.00** leading to diagnosis and treatment for "Adjustment Disorder with mixed anxiety and depressed mood," Type 2 diabetes, fracture of right hand, liver disease, permanent and significant psychological distress, panic attacks, anxiety and nervousness and impairment of cognitive function, due to Defendants' actions.

---

[1] Courts have allowed prevailing plaintiffs to recover for increased tax liability on front and back pay awards. O'Neill v. Sears, Roebuck and Co., 108 F.Supp.2d 443 (E.D.N.Y. 2000) (prevailing plaintiff in ADEA action was entitled to recover for increased tax liability on front and back pay awards)

**4. Copies of Any Insurance Agreement Which May Apply:**

Plaintiffs are not aware of any such applicable insurance coverage.

**5. Expert Witness Information:**

Plaintiff intends to call the following expert witness at the trial of this matter:

1) **Kristin K. Kucsma, M.A.**
   Sobel Tinari Economics Group
   293 Eisenhower Parkway, Suite 190
   Livingston, NJ 07039

**PLAINTIFF RESERVES THE RIGHT TO CHANGE, MODIFY OR SUPPLEMENT ANY AUTOMATIC DISCLOSURES WHICH HE MAY LATER LEARN TO BE INCORRECT OR INCOMPLETE.**

Dated: New York, New York
April 25, 2019

MADUEGBUNA COOPER, LLP
Attorneys for Plaintiff, ROBERT W. GORDON, ESQ.
By: Samuel O. Maduegbuna, Esq. (SM 6084)
30 Wall Street, 8th Floor
New York, N.Y. 10005
(212) 232-0155

TO: ZACHARY W. CARTER
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

Attention: Bruce Rosenbaum, Esq.
Asst. Corporation Counsel

## **DECLARATION OF SERVICE**

I, SAMUEL O. MADUEGBUNA, served the foregoing **PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURE STATEMENT PURSUANT TO FED.R.CIV.P. 26(a)(1)** by causing a copy to be delivered by ELECTRONIC MAIL and FIRST CLASS MAIL on April 25, 2019 to:

ZACHARY W. CARTER
Corporation Counsel of the City of New York
100 Church Street,
New York, NY 10007

Attention: Bruce Rosenbaum, Esq.
Asst. Corporation Counsel

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: New York, New York
April 25, 2019

SAMUEL O. MADUEGBUNA, ESQ.